**Click here to Respond to Selected Documents**

**Sort Date Entries:** Descending Ascending

**Display Options:** All Entries ⌄

**08/08/2024**

**Notice of Service**

Affidavit of Service; Electronic Filing Certificate of Service.

**Filed By:** MAUREEN MICHAELA BRADY
**On Behalf Of:** J B

**Corporation Served**

Document ID - 24-SMCC-7439; Served To - BLUE EYED BULL INVESTMENT CORPORATION; Served Date - 08/05/2024; Served Time - 10:36:00; Service Type - SP; Reason Description - SERV; Service Text -SUBSTITUTE SERVICE-JENNIFER GORDON, REGISTERED AGENT

**08/01/2024**

**Judge Assigned**

Per Administrative Order, this case has temporarily been transferred from Division 14 to Division 4 for administrative purposes only. This case remains assigned to Division 14. Please contact Division 14 with any questions 816-881-3614.

**07/12/2024**

**Summons Issued-Circuit**

Document ID: 24-SMCC-7439, for BLUE EYED BULL INVESTMENT CORPORATION.

**Order - Special Process Server**

**Proposed Order Filed**

Proposed Order Granting Motion for Private Process Server; Electronic Filing Certificate of Service.

**Filed By:** MAUREEN MICHAELA BRADY
**On Behalf Of:** J B

**06/10/2024**

**Motion Granted/Sustained**

**Associated Entries:** 05/09/2024 -
**Motion Filed**

**+**

**Order**

Order Granting Motion to Keep Identity of Plaintiff Private

**05/29/2024**

**Correspondence Sent**
**Note to Clerk eFiling**

**Filed By:** LUCY GUYOL MCSHANE

**Proposed Order Filed**

Proposed Order for Private Process Server; Electronic Filing Certificate of Service. UNABLE TO USE. NO 2024 REGISTRATION NUMBERS.

**Filed By:** LUCY GUYOL MCSHANE
**On Behalf Of:** J B

**Notice**

Initial Notice to take the deposition of Defendants Corp Rep; Electronic Filing Certificate of Service.

**Filed By:** LUCY GUYOL MCSHANE
**On Behalf Of:** J B

**Motion Special Process Server**

Motion for Private Process Service; Electronic Filing Certificate of Service.

**Filed By:** LUCY GUYOL MCSHANE
**On Behalf Of:** J B

**Proposed Order Filed**

Proposed Order to keep Ps identity Private; Electronic Filing Certificate of Service.

**Filed By:** LUCY GUYOL MCSHANE
**On Behalf Of:** J B

**EXHIBIT 1**

**Cert Serv of Interrog Filed**
Certificate OF SERVICE OF PLAINTIFFS OPENING INTERROGATORIES TO DEFENDANT; Electronic Filing Certificate of Service.
    **Filed By:** LUCY GUYOL MCSHANE
    **On Behalf Of:** J B
**Summ Req-Circuit Pers Serv**
Request for Summons; Electronic Filing Certificate of Service.
    **Filed By:** LUCY GUYOL MCSHANE
    **On Behalf Of:** J B

**05/13/2024**

**Correspondence Sent**
**Case Mgmt Conf Scheduled**

    **Scheduled For:** 08/29/2024; 1:30 PM; JOHN M. TORRENCE; Jackson - Kansas City

**05/09/2024**

**Filing Info Sheet eFiling**
**Motion Filed**
Motion to Keep Private Plaintiff Identity.
    **On Behalf Of:** J B
    **Associated Entries: 06/10/2024 - Motion Granted/Sustained**
**Designation of Lead Attorney**
Designation of Lead Counsel.
    **On Behalf Of:** J B
**Entry of Appearance Filed**
Entry of LGM.
    **On Behalf Of:** J B
**Entry of Appearance Filed**
Entry of MMB.
    **On Behalf Of:** J B
**Pet Filed in Circuit Ct**
Petition For Damages.
    **On Behalf Of:** J B

Electronically Filed - JACKSON - KANSAS CITY - May 09, 2024 - 02:02 PM

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI

| | |
|---|---|
| **J.B.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) Case No: |
| | ) Division: |
| | ) |
| **BLUE EYED BULL INVESTMENT** | ) |
| **CORPORATION d/b/a TEST SMARTLY** | ) |
| **LABS** | ) |
| Serve Registered Agent: | ) |
|     Jennifer V. Gordon | ) |
|     608 SW 3rd St. | ) |
|     Lee's Summit, MO 64063 | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## PETITION FOR DAMAGES

COMES NOW J.B. ("Plaintiff"), for his Petition for Damages against Defendant Blue Eyed Bull Investment Corporation d/b/a Test Smartly Labs (hereinafter sometimes referred to as "Defendant" and/or "Test Smartly"), respectfully states and alleges as follows:

## NATURE OF THE CASE

1. This is action brought by Plaintiff seeks to redress Defendant's willful and reckless violations of his privacy rights. Plaintiff is a customer of Defendant who entrusted his Protected Health Information ("PHI") and personally identifiable information ("PII") to Defendant. Defendant betrayed Plaintiff's trust by failing to properly safeguard and protect his PHI and PII and publicly disclosing his PHI and PII without authorization in violation of Missouri common law.

2. This action pertains to Defendant's unauthorized disclosure of the Plaintiff's PHI and PII that occurred on or about March 9, 2023 (the "Breach").

3.     Defendant disclosed Plaintiff's PHI and PII to unauthorized persons as a direct and/or proximate result of Defendant's failure to safeguard and protect his PHI and PII.

4.     The wrongfully disclosed PHI and PII included, *inter alia*, Plaintiff's name, driver's license number, personal health information, and laboratory results of foreign substances tested within the specimen (which, importantly, "…had not been verified by an independent 3rd party Medical Review Officer.")

5.     Defendant flagrantly disregarded Plaintiff's privacy and property rights by intentionally, willfully and recklessly failing to take the necessary precautions required to safeguard and protect Plaintiff's PHI and PII from unauthorized disclosure. Plaintiff's PHI and PII was improperly handled, inadequately protected, readily able to be copied by thieves and not kept in accordance with basic security protocols. Defendant's obtaining of the information and sharing of same also represent a flagrant disregard of Plaintiff's rights, both as to privacy and property.

6.     Plaintiff has standing to bring this action because as a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Breach, Plaintiff has incurred (and will continue to incur) damages in the form of, *inter alia*, (i) loss of privacy and/or (ii) the additional damages set forth in detail below, which are incorporated herein by reference.

7.     Defendant's wrongful actions and/or inaction and the resulting Breach have also placed Plaintiff at an imminent, immediate and continuing increased risk of identity theft, identity fraud and medical fraud. Indeed, Javelin Strategy & Research ("Javelin"), a leading provider of quantitative and qualitative research, released its 2012 Identity Fraud Report ("the Javelin Report"), quantifying the impact of breaches. According to the Javelin Report, individuals whose PHI and PII is subject to a reported breach—such as the Breach at issue here—are approximately

9.5 times more likely than the general public to suffer identity fraud and/or identity theft. Moreover, there is a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported, and a high probability that criminals who may now possess Plaintiff's PII and not yet used the information will do so at a later date or re-sell it.

8.     Plaintiff has also suffered and is entitled to damages for the lost benefit of his bargain with Defendant.  Plaintiff paid Test Smartly for its services including it protecting his PHI and PII.  The lost benefit of the bargain is measured by the difference between the value of what Plaintiff should have received when he paid for Defendant's services, and the value of what he actually did receive; services without adequate privacy safeguards.  Plaintiff has been harmed in that he (1) paid more for privacy and confidentiality than he otherwise would have, and (2) paid for privacy protections he did not receive. In that respect, Plaintiff has not received the benefit of the bargain and has suffered an ascertainable loss.

9.     Additionally, because of Defendant's conduct, Plaintiff has been harmed in that Defendant has breached its common law fiduciary duty of confidentiality owed to Plaintiff.

10.     Accordingly, Plaintiff seeks redress against Defendant for breach of implied contract, breach of contract, invasion of privacy by the public disclosure of private facts, common law negligence, breach of Missouri Merchandising Practices Act, negligent training and supervision, and breach of fiduciary duty of confidentiality.

11.     Plaintiff seeks all (i) actual damages, economic damages, and/or nominal damages, (ii) injunctive relief, and (iii) attorneys' fees, litigation expenses, and costs.

### JURISDICTION AND VENUE

12.     The Court has jurisdiction over the parties and the subject matter of this action. Jurisdiction is proper because both Plaintiff and Defendant are citizens of the State of Missouri and Defendant is a business operating, and licensed under, the laws of the state of Missouri.

13.     Venue is proper in Lee's Summit, Jackson County, Missouri, pursuant to RSMo § 508.010 because the acts complained of occurred and Defendant is located in Lee's Summit, Jackson County, Missouri.

## PARTIES

14.     Plaintiff is an adult residing in Jamesport, Daviess County, Missouri.

15.     Defendant Blue Eyed Bull Investment Corporation d/b/a Test Smartly Labs is, upon information and belief, a Missouri Corporation with its headquarters in Lee's Summit, Jackson County, Missouri. Defendant can be served at its Registered Address at: Attn.: Jennifer V. Gordon, 608 SW 3rd St., Lee's Summit, Missouri.

## BACKGROUND FACTS

16.     Certain allegations are made upon information and belief.

17.     Defendant Test Smartly is a health care provider pursuant to state and federal law, providing health care and medical services to the general public, operating at several locations in the Kansas City Metropolitan Area.

18.     Plaintiff is a customer of Defendant Test Smartly.

19.     As a part of its business operations, Defendant collects and maintains PHI and PII of its patients.

20.     Plaintiff voluntarily underwent a panel hair test (otherwise known as a drug test) at Test Smartly on February 28, 2023.

4

Electronically Filed - JACKSON - KANSAS CITY - May 09, 2024 - 02:02 PM

21.     Plaintiff rightfully expected the details of said testing to be discrete and did not authorize the release of his test or results to anyone but himself.

22.     Plaintiff entered into an implied contract with Defendant for the adequate protection of his PHI and PII.

23.     Defendant is required to maintain the strictest privacy and confidentiality of Plaintiff medical records and other PHI and PII.

24.     Defendant posts its privacy practices online and can be found at: https://testsmartlylabs.com/privacy-policy/

25.     In or about February 2023, Plaintiff was in the midst of dissolution proceedings with his estranged wife. J.B. and his former wife have multiple children together.

26.     Plaintiff is a recovering opioid addict. His former wife did not know this in February 2023.

27.     J.B. was a patient of Test Smartly.

28.     On February 28, 2023, Plaintiff voluntarily and privately had a panel hair test done at Test Smartly.  This test was not ordered through the family court nor was it known to the opposing party in his dissolution.

29.     Plaintiff's estranged wife learned that J.B. underwent a drug test at Test Smartly and informed her divorce attorney.  The attorney then shared the information with his client and a myriad of others.

30.     On or about March 2023, the ex-wife's divorce lawyer, Kim Brown, contacted Test Smartly and requested J.B.'s test results stating she had a "court order" for said records. Attorney Brown did not have a court order and Test Smartly did not ask for a copy of one, nor did they ask

for a medical authorization signed by J.B. Test Smartly had no authorization whatsoever to disclose J.B.'s personal health information to Attorney Brown or anyone else.

31.     However, on March 9, 2023, Test Smartly sent Attorney Brown J.B.'s preliminary lab report which showed a positive test result for opioids in J.B.'s system.

32.     At the time of testing, J.B. was taking opioid medication under advisement of a healthcare provider and was prescribed said medication.

33.     Attorney Brown shared J.B.'s positive drug results with her client.

34.     At some point in time, J.B. learned that his estranged wife had received his PHI from Test Smartly.

35.     J.B. contacted Test Smartly and submitted a formal complaint. Defendant began an internal investigation. Their investigation revealed one of their employees had unlawfully disclosed J.B.'s PHI.

36.     Test Smartly advised Attorney Brown to destroy the lab results; Attorney Brown did not.

37.     Instead, Attorney Brown and her client used the positive Test Smartly lab results against J.B. in the custody litigation with his estranged wife.

38.     J.B.'s estranged wife disparaged J.B. to friends and family. More importantly, she denied J.B. all contact with his children.

39.     Defendant Test Smartly sent J.B. a letter on March 14, 2023 advising him they were investigating the employee who disclosed his PHI to Attorney Brown.

40.     However, Defendant Test Smartly did not terminate the employee who disseminated J.B.'s private health information, rather, they only considered potential discipline and training as stated in their Breach letter.

41.     Defendant Test Smartly did not self-report the disclosure to the Office of Civil Rights.

42.     J.B. is shocked, devastated, embarrassed, and humiliated. He has incurred significant costs in legal fees regarding his custody battle.

43.     The disclosure of the PHI and PII at issue was a result of the Defendant's inadequate safety and security protocols governing PHI and PII.

44.     The wrongfully disclosed PHI and PII included, *inter alia*, Plaintiff's name, driver's license number, and protected health information including his laboratory results.

45.     As a direct and/or proximate result of Defendant's failure to properly safeguard and protect the PHI and PII of J.B., Plaintiff's PHI and PII was stolen, compromised, and wrongfully disseminated without authorization.

46.     Defendant had a duty to its customer to protect him from wrongful disclosures.

47.     As a health care provider, Defendant is required to train and supervise its employees regarding the policies and procedures as well as the State and Federal laws for safeguarding patient information.

48.     Defendant is a covered entity pursuant to the Health Insurance Portability and Accountability Act ("HIPAA"). *See* 45 C.F.R. § 160.102. Defendant must therefore comply with the HIPAA Privacy Rule and Security Rule. *See* 45 C.F.R. Part 160 and Part 164, Subparts A through E.

49.     Defendant is a covered entity pursuant to the Health Information Technology Act ("HITECH")[1]. *See* 42 U.S.C. §17921, 45 C.F.R. § 160.103.

---

[1] HIPAA and HITECH work in tandem to provide guidelines and rules for maintaining protected health information. HITECH references and incorporates HIPAA.

7

50. The HIPAA and HITECH rules work in conjunction with the already established laws of privacy Missouri. HIPAA and HITECH do not recognize an individual right of claim for violation but provide the guidelines for the standard of procedure dictating how patient medical information should be kept private.

51. HIPAA's Privacy Rule, otherwise known as "Standards for Privacy of Individually Identifiable Health Information," establishes national standards for the protection of health information.

52. HIPAA's Security Rule, otherwise known as "Security Standards for the Protection of Electronic Protected Health Information," establishes national security standards for the protection of health information that is held or transferred in electronic form. See 42 C.F.R. §§ 164.302-164.318.

53. HIPAA limits the permissible uses of "protected health information" and prohibits the unauthorized disclosure of "protected health information." 45 C.F.R. § 164.502. HIPAA requires that covered entities implement appropriate administrative, technical, and physical safeguards for this information and requires that covered entities reasonably safeguard protected health information from any intentional or unintentional use or disclosure that is in violation of the standards, implementation specifications or other requirements of this subpart. *See* 45 C.F.R. § 164.530(c).

54. HIPAA requires a covered entity to have and apply appropriate sanctions against members of its workforce who fail to comply with the privacy policies and procedures of the covered entity or the requirements of 45 C.F.R. Part 164, Subparts D or E. *See* 45 C.F.R. § 164.530(e).

55.     HIPAA requires a covered entity to mitigate, to the extent practicable, any harmful effect that is known to the covered entity of a use or disclosure of protected health information in violation of its policies and procedures or the requirements of 45 C.F.R. Part 164, Subpart E by the covered entity or its business associate. *See* 45 C.F.R. § 164.530(f).

56.     Under HIPAA:

Protected health information means individually identifiable health information:

(1) Except as provided in paragraph (2) of this definition, that is:

(i) Transmitted by electronic media;

(ii) Maintained in electronic media; or

(iii) Transmitted or maintained in any other form or medium.[2]

57.     HIPAA and HITECH obligated Defendant to implement technical policies and procedures for electronic information systems that maintain electronic protected health information so that such systems were accessible only to those persons or software programs that had been granted access rights and who have a working need to access and view the information. *See* 45 C.F.R. § 164.312(a)(1); *see also* 42 U.S.C. §17902.

58.     HIPAA and HITECH also obligated Defendant to implement policies and procedures to prevent, detect, contain, and correct security violations, and to protect against uses or disclosures of electronic protected health information that are reasonably anticipated but not permitted by the privacy rules. *See* 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); *see also* 42 U.S.C. §17902.

59.     HIPAA further obligated Defendant to ensure that its workforce complied with HIPAA security standard rules (*see* 45 C.F.R. § 164.306(a)(4)) to effectively train its workforces

---

[2] 45 C.F.R. § 160.103

on the policies and procedures with respect to protected health information, as necessary and appropriate for those individuals to carry out their functions and maintain the security of protected health information. *See* 45 C.F.R. § 164.530(b)(1).

60.     HIPAA also requires the Office of Civil Rights ("OCR"), within the Department of Health and Human Services ("HHS"), to issue annual guidance documents on the provisions in the HIPAA Security Rule. *See* 45 C.F.R. §§ 164.302-164.318. For example, "HHS has developed guidance and tools to assist HIPAA covered entities in identifying and implementing the most cost effective and appropriate administrative, physical, and technical safeguards to protect the confidentiality, integrity, and availability of e-PHI and comply with the risk analysis requirements of the Security Rule." *See* US Department of Health & Human Services, Security Rule Guidance Material.[3] The list of resources includes a link to guidelines set by the National Institute of Standards and Technology (NIST), which OCR says "represent the industry standard for good business practices with respect to standards for securing e-PHI." *See* US Department of Health & Human Services, Guidance on Risk Analysis.[4]

61.     Should a health care provider experience an unauthorized disclosure, it is required to conduct a Four Factor Risk Assessment (HIPAA Omnibus Rule). This standard requires, "A covered entity or business associate must now undertake a four-factor risk assessment to determine whether or not PHI has been compromised and overcome the presumption that the breach must be reported. The four-factor risk assessment focuses on:

> (1) the nature and extent of the PHI involved in the incident (e.g., whether the incident involved sensitive information like social security numbers or infectious disease test results);

---

[3] http://www.hhs.gov/hipaa/for-professionals/security/guidance/index.html
[4] https://www.hhs.gov/hipaa/for-professionals/security/guidance/guidance-risk-analysis/index.html

10

(2) the recipient of the PHI;

(3) whether the PHI was actually acquired or viewed; and

(4) the extent to which the risk that the PHI was compromised has been mitigated following unauthorized disclosure (e.g., whether it was immediately sequestered and destroyed)."[5]

62.     The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414, requires HIPAA covered entities and their business associates to provide notification following a breach of unsecured protected health information.

63.     The HIPAA Contingency Operations Rule, 45 C.F.R. §164.301(a), requires a healthcare provider to have security measures in place and train its employees and staff so that all its staff and employees know their rolls in facility security.

64.     Defendant failed to provide proper notice to Plaintiff of the disclosure.

65.     Defendant failed to conduct or improperly conducted the four factor risk assessment following the unauthorized disclosure.

66.     As a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Breach, the criminal(s) and/or their customers now have Plaintiff's compromised PHI and PII.

67.     There is a robust international market for the purloined PHI and PII, specifically medical information.  Defendant's wrongful actions and/or inaction and the resulting Breach have also placed Plaintiff at an imminent, immediate and continuing increased risk of identity theft, identity fraud[6] and medical fraud.

---

[5] 78 Fed. Reg. 5641-46, *See also*, 45 C.F.R. §164.304

[6]     According to the United States Government Accounting Office (GAO), the terms "identity theft" or "identity fraud" are broad terms encompassing various types of criminal activities. Identity theft occurs when PII is used to commit fraud or other crimes. These crimes include, *inter*

68.     Identity theft occurs when someone uses an individual's PHI and PII, such as the person's name, Social Security number, or credit card number, without the individual's permission, to commit fraud or other crimes. *See* Federal Trade Commission, Fighting Back against Identity Theft, http://www.ftc.gov/bcp/edu/microsites/idtheft/consumers/ about-identity-theft.html (last visited Jan. 18, 2013).  The Federal Trade Commission estimates that the identities of as many as nine million Americans are stolen each year. *Id.*

69.     The Federal Trade Commission correctly sets forth that "Identity theft is serious. While some identity theft victims can resolve their problems quickly, others spend hundreds of dollars and many days repairing damage to their good name and credit record. Some consumers victimized by identity theft may lose out on job opportunities, or be denied loans for education, housing or cars because of negative information on their credit reports. In rare cases, they may even be arrested for crimes they did not commit." *Id.*

70.     Identity theft crimes often involve more than just crimes of financial loss, such as various types of government fraud (such as obtaining a driver's license or official identification card in the victim's name but with their picture), using a victim's name and Social Security number to obtain government benefits and/or filing a fraudulent tax return using a victim's information. Identity thieves also obtain jobs using stolen Social Security numbers, rent houses and apartments and/or obtain medical services in a victim's name.  Identity thieves also have been known to give a victim's PHI and PII to police during an arrest, resulting in the issuance of an arrest warrant in the victim's name and an unwarranted criminal record.

---

*alia,* credit card fraud, phone or utilities fraud, bank fraud and government fraud (theft of government services).

71.     According to the FTC, "the range of privacy-related harms is more expansive than economic or physical harm or unwarranted intrusions and that any privacy framework should recognize additional harms that might arise from unanticipated uses of data."[7] Furthermore, "there is significant evidence demonstrating that technological advances and the ability to combine disparate pieces of data can lead to identification of a consumer, computer or device even if the individual pieces of data do not constitute PII."[8]

72.     According to the Javelin Report, in 2011, the mean consumer cost of rectifying identity fraud was $354 while the mean resolution time of identity fraud was 12 hours.  *Id.* at 6. In 2011, the consumer cost for new account fraud and existing non-card fraud increased 33% and 50% respectively.  *Id.* at 9.   Consumers who received a breach notification had a fraud incidence rate of 19% in 2011 and, of those experiencing fraud, 43% reported their credit card numbers were stolen and 22% of the victims reported their debit card numbers were stolen.  *Id.* at 10.   More important, consumers who were notified that their PHI and PII had been breached were 9.5 times more likely to experience identity fraud than consumers who did not receive such a notification. *Id.* at 39.

73.     The unauthorized disclosure of a person's Social Security number can be particularly damaging since Social Security numbers cannot be easily replaced like a credit card or debit card.  In order to obtain a new Social Security number, a person must show evidence that someone is using the number fraudulently or is being disadvantaged by the misuse.  *See* Identity

---

[7] *Protecting Consumer Privacy in an Era of Rapid Change* FTC, Report March 2012 (http://www.ftc.gov/os/2012/03/120326privacyreport.pdf).

[8] *Protecting Consumer Privacy in an Era of Rapid Change: A Proposed Framework for Businesses and Policymakers*, *Preliminary FTC Staff Report*, 35-38 (Dec. 2010), *available at* http://www.ftc.gov/os/2010/12/101201privacyreport.pdf; *Comment of Center for Democracy & Technology,* cmt. #00469, at 3; *Comment of Statz, Inc.*, cmt. #00377, at 11-12.

Theft and Your Social Security Number, SSA Publication No. 05-10064, October 2007, ICN 46327 (http://www.ssa.gov/pubs/10064.html). Thus, a person whose PII has been stolen cannot obtain a new Social Security number until the damage has already been done.

74.     Obtaining a new Social Security number also is not an absolute prevention against identity theft. Government agencies, private businesses and credit reporting companies likely still have the person's records under the old number, so using a new number will not guarantee a fresh start. For some victims of identity theft, a new number may actually create new problems; because prior positive credit information is not associated with the new Social Security number, it is more difficult to obtain credit due to the absence of a credit history.

75.     Medical fraud (or medical identity theft) occurs when a person's personal information is used without authorization to obtain, or receive payment for, medical treatment, services or goods. *See* www.ftc.gov/bcp/edu/microsites/idtheft/consumers/resolving-specific-id-theft-problems.html. For example, as of 2010, more than 50 million people in the United States did not have health insurance according to the U.S. census. This, in turn, has led to a surge in medical identity theft as a means of fraudulently obtaining medical care. "Victims of medical identity theft [also] may find that their medical records are inaccurate, which can have a serious impact on their ability to obtain proper medical care and insurance benefits." *Id.*

76.     The Breach substantially increased Plaintiff's risk of being victimized by "phishing." "Phishing" is an attempt to acquire information (and sometimes, indirectly, money), such as usernames, passwords and credit card details by masquerading as a trustworthy entity through an electronic communication. *See* http://www.onguardonline.gov/articles/0003-phishing (last visited Jan. 18, 2013).

14

77.     Communications purporting to be from popular social websites, auction sites, online payment processors or IT administrators are commonly used to lure the unsuspecting public. Phishing emails may contain links to websites that are infected with malware. Phishing is typically carried out by e-mail spoofing or instant messaging, and often directs users to enter details at a fake website that looks and feels almost identical to the legitimate one. When criminals have access to PHI and PII from a large group of similarly situated victims, it is much more feasible to develop a believable phishing spoof email. They can then get this group of victims to reveal additional private information, such as credit cards, bank accounts, and the like.

78.     Defendant flagrantly disregarded and/or violated Plaintiff's privacy and property rights, and harmed him in the process, by not obtaining Plaintiff's prior written consent to disclose their PHI and PII to any other person—as required by laws, regulations, industry standards and/or internal company standards.

79.     Defendant flagrantly disregarded and/or violated Plaintiff's privacy and property rights, and harmed him in the process, by failing to safeguard and protect and, in fact, wrongfully disseminating Plaintiff's PHI and PII to unauthorized persons.

80.     Upon information and belief, Defendant flagrantly disregarded and/or violated Plaintiff's privacy and property rights, and harmed him in the process, by failing to keep or maintain an accurate accounting of the PHI and PII wrongfully disclosed in the Breach.

81.     Defendant flagrantly disregarded and/or violated Plaintiff's privacy rights, and harmed him in the process, by failing to establish and/or implement appropriate administrative, technical and/or physical safeguards to ensure the security and confidentiality of Plaintiff's PHI and PII to protect against anticipated threats to the security or integrity of such information. Defendant's unwillingness or inability to establish and maintain the proper information security

procedures and controls is an abuse of discretion and confirms its intentional and willful failure to observe procedures required by law, industry standards and/or its own internal policies and procedures.

82.     The actual harm and adverse effects to Plaintiff, including the imminent, immediate and continuing increased risk of harm for identity theft, identity fraud and/or medical fraud directly and/or proximately caused by Defendant's above wrongful actions and/or inaction and the resulting Breach requires Plaintiff to take affirmative acts to recover their peace of mind, and personal security including, without limitation, purchasing credit reporting services, purchasing credit monitoring and/or internet monitoring services, frequently obtaining, purchasing and reviewing credit reports, bank statements, and other similar information, instituting and/or removing credit freezes and/or closing or modifying financial accounts—for which there is a financial and temporal cost. Plaintiff has suffered, and will continue to suffer, such damages for the foreseeable future.

83.     Plaintiff has lost standing in the medical and general communities as a result of this wrongful disclosure.

84.     Victims and potential victims of identity theft, identity fraud and/or medical fraud—such as Plaintiff—typically spend hundreds of hours in personal time and hundreds of dollars in personal funds to resolve credit and other financial issues resulting from breaches. *See Defend: Recover from Identity Theft*, http://www.ftc.gov/bcp/edu/microsites/idtheft//consumers/defend.html; *Fight Identity Theft*, www.fightidentitytheft.com. According to the Javelin Report, not only is there a substantially increased risk of identity theft and identity fraud for breach victims, those who are further victimized by identity theft or identity fraud will incur an average fraud-related economic loss of

$1,513 and incur an average of $354 of out-of-pocket expenses attempting to rectify the situation. *Id*. at 6.

85.     Other statistical analyses are in accord. The GAO found that identity thieves use PHI and PII to open financial accounts and payment card accounts and incur charges in a victim's name.  This type of identity theft is the "most damaging" because it may take some time for the victim to become aware of the theft, in the meantime causing significant harm to the victim's credit rating and finances.  Moreover, unlike other PHI and PII, Social Security numbers are incredibly difficult to change and their misuse can continue for years into the future. The GAO states that victims of identity theft face "substantial costs and inconvenience repairing damage to their credit records," as well the damage to their "good name."

86.     Defendant's wrongful actions and/or inaction directly and/or proximately caused the theft and dissemination into the public domain of Plaintiff's PHI and PII without his knowledge, authorization and/or consent.  As a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Breach, Plaintiff has incurred (and will continue to incur) damages in the form of, *inter alia*, (i) loss of privacy, (ii) the imminent, immediate and continuing increased risk of identity theft, identity fraud and/or medical fraud, (iii) out-of-pocket expenses to purchase credit monitoring, internet monitoring, identity theft insurance and/or other Breach risk mitigation products, (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft, identity fraud and/or medical fraud pressed upon him by the Breach, including the costs of placing a credit freeze and subsequently removing a credit freeze, (v) the value of his time spent mitigating the increased risk of identity theft, identity fraud and/or medical fraud pressed upon him by the Breach and (vi) the lost benefit of his bargain when he paid for his privacy to be protected and it was not

17

**COUNT I**
**BREACH OF IMPLIED CONTRACT**

87.     The preceding factual statements and allegations are incorporated herein by reference.

88.     Plaintiff, as part of his agreement with Defendant, provided Defendant his PHI and PII.

89.     In providing such PHI and PII, Plaintiff entered into an implied contract with Defendant, whereby Defendant became obligated to reasonably safeguard Plaintiff's PHI and PII.

90.     Under the implied contract, Defendant was obligated to not only safeguard J.B.'s PHI and PII, but also to provide Plaintiff with prompt, adequate notice of any Breach or unauthorized access of said information.

91.     Defendant breached the implied contract with Plaintiff by failing to take reasonable measures to safeguard his PHI and PII.

92.     As a direct result of Defendant's breach of its duty of confidentiality and privacy and the disclosure of Plaintiff's confidential medical information, Plaintiff suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, humiliation and loss of enjoyment of life.

93.     Plaintiff suffered and will continue to suffer damages including, but not limited to: (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of his PHI and PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon him by the Breach; (v) the value of his time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; and (vi) the increased risk of identity theft.  At the very least, Plaintiff are entitled

to nominal damages.

## COUNT II
## <u>NEGLIGENCE</u>

94.     The preceding factual statements and allegations are incorporated herein by reference.

95.     Defendant owed a duty to Plaintiff to safeguard and protect his PHI and PII.

96.     Defendant breached its duty by failing to exercise reasonable care and failing to safeguard and protect Plaintiff's PHI and PII.

97.     It was reasonably foreseeable that Defendant's failure to exercise reasonable care in safeguarding and protecting Plaintiff's PHI and PII would result in an unauthorized third-party gaining access to such information for no lawful purpose.

98.     As a direct result of Defendant's breach of its duty of confidentiality and privacy and the disclosure of Plaintiff's confidential medical information, Plaintiff suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, humiliation and loss of enjoyment of life.

99.     Plaintiff's suffered and will continue to suffer damages including, but not limited to:  (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of his PHI and PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon hi, by the Breach; (v) the value of his time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; and (vi) the increased risk of identity theft.  At the very least, Plaintiff is entitled to nominal damages.

100.    Defendant's wrongful actions and/or inaction and the resulting Breach (as described above) constituted (and continue to constitute) negligence at common law.

## COUNT III
## INVASION OF PRIVACY BY PUBLIC DISCLOSURE OF PRIVATE FACTS

101.    The preceding factual statements and allegations are incorporated herein by reference.

102.    Plaintiff's PHI and PII was (and continues to be) sensitive and personal private information.

103.    By virtue of Defendant's failure to safeguard and protect Plaintiff's PHI and PII and the resulting Breach, Defendant wrongfully disseminated Plaintiff's PHI and PII to unauthorized persons.

104.    Dissemination of Plaintiff's PHI and PII is not of a legitimate public concern; publicity of his PHI and PII was, is and will continue to be offensive to Plaintiff and all reasonable people. The unlawful disclosure of same violates public mores.

105.    As a direct result of Defendant's breach of its duty of confidentiality and privacy and the disclosure of Plaintiff's confidential medical information, Plaintiff suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, humiliation and loss of enjoyment of life.

106.    Plaintiff suffered and will continue to suffer damages including, but not limited to: (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of his PHI and PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon him by the Breach; (v) the value of his time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or

identity fraud; and (vi) the increased risk of identity theft. At the very least, Plaintiff is entitled to nominal damages.

107.    Defendant's wrongful actions and/or inaction and the resulting Breach (as described above) constituted (and continue to constitute) an invasion of Plaintiff's privacy by publicly and wrongfully disclosing his private facts (*i.e.*, their PHI and PII) without their authorization or consent.

**COUNT IV**
**BREACH OF FIDUCIARY DUTY OF CONFIDENTIALITY**

108.    The preceding factual statements and allegations are incorporated herein by reference.

109.    At all times relevant hereto, Defendant owed, and owes, a fiduciary duty to Plaintiff pursuant to Missouri common law, to keep Plaintiff's medical and other PHI and PII information confidential.

110.    The fiduciary duty of privacy imposed by Missouri law is explicated under the procedures set forth in the Health Insurance Portability and Accountability Act Privacy Rule, including, without limitation the procedures and definitions of 45 C.F.R. §160.103 and 45 C.F.R. §164.530 which requires a covered entity, health care provider, to apply appropriate administrative, technical, and physical safeguards to protect the privacy of patient medical records.

111.    Defendant breached its fiduciary duty to Plaintiff by disclosing Plaintiff PHI and PII to unauthorized third parties.

112.    As a direct result of Defendant's breach of fiduciary duty of confidentiality and the disclosure of Plaintiff's confidential medical information, Plaintiff suffered damages.

113.    As a direct result of Defendant's breach of its duty of confidentiality and privacy and the disclosure of Plaintiff's confidential medical information, Plaintiff suffered damages,

21

including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, humiliation and loss of enjoyment of life.

114.    Plaintiff suffered and will continue to suffer damages including, but not limited to: (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of his PHI and PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon him by the Breach; (v) the value of his time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; and (vi) the increased risk of identity theft.  At the very least, Plaintiff is entitled to nominal damages.

**COUNT V**
**VIOLATIONS OF MISSOURI MERCHANDISING PRACTICES ACT, MO. REV.**
**STAT. § 407.010 et seq.**

115.    The preceding factual statements and allegations are incorporated herein by reference.

116.    RSMo. 407.020 prohibits the use of any "deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce"…

117.    An "unfair practice" is defined by Missouri law, 15 CSR 60-8.020, as any practice which:

(A) Either-

1. Offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions; or

2. Is unethical, oppressive or unscrupulous; and

(B) Presents a risk of, or causes, substantial injury to consumers.

118.     An "unfair practice is defined by Missouri law,

15 CSR 60-8.020 (1)(B) provides that an "Unfair Practice in General" is

(1) An unfair practice is any practice which –

   (A) Either –

      1.  <u>Offends any public policy</u> as it has been established by the Constitution, <u>statutes</u> or

      common law of this state, or by the Federal Trade Commission, or its interpretive

      decisions; or

      2.  Is unethical, oppressive or unscrupulous; and

   (B) Presents a risk of, or causes, <u>substantial injury to consumers</u>.

15CSR 60-8.040 provides that an "Unfair Practice is:

An unfair practice for any person in connection with the advertisement or sale of merchandise to

violate the duty of good faith in solicitation, negotiation and performance, or in <u>any manner fail to</u>

<u>act in good faith</u>.

119.     Plaintiff and Defendant are "persons" within the meaning of section 407.010 (5).

120.     Merchandise is defined by the MMPA, to include the providing of "services" and,

therefore, encompasses Healthcare services.  Healthcare services are a good.

121.     Efforts to maintain the privacy and confidentiality of medical records are part of

the healthcare services associated with a good.

122.     Maintenance of medical records are "merchandise" within the meaning of section

407.010(4).

123.    Plaintiff's goods and services purchased from Test Smartly were for "personal, family or household purposes" within the meaning of the Missouri Merchandising Practices Missouri Revised Statutes.

124.    As set forth herein, Defendant's acts, practices and conduct violate section 407.010(1) in that, among other things, Defendant has used and/or continues to use unfair practices, concealment, suppression and/or omission of material facts in connection with the advertising, marketing, and offering for sale of services associated with healthcare services.   Such acts offend the public policy established by Missouri statute and constitute an "unfair practice" as that term is used in Missouri Revised Statute 407.020(1).

125.    Defendant's unfair, unlawful and deceptive acts, practices and conduct include: (1) representing to its customers that it will not disclose their sensitive personal health information to an unauthorized third party or parties; (2) failing to implement security measures such as securing the records in a safe place; and (3) failing to train personnel.

126.    Defendant's conduct also violates the enabling regulations for the MMPA because it: (1) offends public policy; (2) is unethical, oppressive and unscrupulous; (3) causes substantial injury to consumers; (4) it is not in good faith; (5) is unconscionable; and (6) is unlawful.  *See* Mo Code Regs. Ann tit. 15, Section 60-8.

127.    As a direct and proximate cause of Defendant's unfair and deceptive acts, Plaintiff has suffered damages in that he (1) paid more for medical record privacy protections than he otherwise would have, and (2) paid for medical record privacy protections that he did not receive. In this respect, Plaintiff have not received the benefit of the bargain and have suffered an ascertainable loss.

128.    Plaintiff seeks actual damages for all monies paid to Test Smartly in violation of the MMPA.  In addition, Plaintiff seeks attorneys' fees.

**COUNT VI**
**NEGLIGENT TRAINING AND SUPERVISION**

129.    The preceding factual statements and allegations are incorporated herein by reference.

130.    At all times relevant hereto, Defendant owes a duty to Plaintiff to hire competent employees, and to train and supervise them to ensure they recognize the duties owed to their customers.

131.    Defendant breached its duty to Plaintiff by allowing its employees to give access to customer medical records to an unauthorized user.

132.    As a direct result of Defendant's breach of its duty of confidentiality and privacy and the disclosure of Plaintiff's confidential medical information, Plaintiff suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, humiliation and loss of enjoyment of life.

133.    Plaintiff suffered and will continue to suffer damages including, but not limited to: (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of his PHI and PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon him by the Breach; (v) the value of his time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; and (vi) the increased risk of identity theft.  At the very least, Plaintiff is entitled to nominal damages.

**COUNT VII**

## **NEGLIGENCE *PER SE***

134.    Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein

135.    Plaintiff was receiving medical testing by the Defendant.

136.    The Defendant is a covered entity for purposes of HIPAA.

137.    Plaintiff is a member of the class HIPAA and HITECH were created to protect.

138.    Plaintiff's private health information is the type of information HIPAA and HITECH were created to protect. HIPAA and HITECH were created to protect against the wrongful and unauthorized disclosure of an individual's health information.

139.    The Defendant gave protected medical information to an unauthorized third party or unauthorized third parties without the written consent or authorization of Plaintiff.

140.    The Defendant gave protected medical information to unauthorized third parties without Plaintiff's oral consent or written authorization.

141.    The information disclosed to an unauthorized third party or unauthorized third parties included private health information about medical treatment.

142.    The Defendant's disclosure of the private health information of Plaintiff without consent or authorization is a violation of HIPAA and HITECH and is negligence *per se*.

143.    Alternatively, Defendant violated HIPAA and HITECH in that it did not reasonably safeguard the private health information of Plaintiff from any intentional or unintentional use or disclosure that is in violation of the standards, implementation specifications or other requirements pursuant to HIPAA and HITECH including, but not limited to, 42 C.F.R. §§ 164.302-164.318, 45 C.F.R. § 164.500, *et seq*, and 42 U.S.C. §17902, and was therefore negligent *per se*.

144.     As a direct result of Defendant's negligence, Plaintiff suffered damages and injuries, including, without limitation, loss of the benefit of their bargain, a reduction in value of their private health information, loss of privacy, loss of medical expenses, loss of trust, loss of confidentiality, embarrassment, humiliation, emotional distress, and loss of enjoyment of life.

145.     Plaintiff suffered and will continue to suffer damages including, but not limited to: (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of his PHI and PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon him by the Breach; (v) the value of his time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; and (vi) the increased risk of identity theft.  At the very least, Plaintiff is entitled to nominal damages.

146.     As a direct result of Defendant's negligence, Plaintiff has a significantly increased risk of being future victims of identity theft relative to what would be the case in the absence of the Defendant's wrongful acts.

147.     As a direct result of Defendant's negligence, future monitoring, in the form of identity-theft or related identity protection is necessary in order to properly warn Plaintiff of, and/or protect Plaintiff from, being a victim of identity theft or other identity-related crimes.

148.     Defendant's conduct was outrageous because Defendant acted with an evil motive and/or with reckless indifference to the rights of Plaintiff, thereby entitling Plaintiff to recover punitive damages from Defendant.

149.     Plaintiff seeks actual damages for all monies paid to Test Smartly in violation of the HIPAA and HITECH.  In addition, Plaintiff seeks attorneys' fees.

## **REQUEST FOR RELIEF**

27

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant, as follows:

A.     Declaring that Defendant breached its implied contract with Plaintiff;

B.     Declaring that Defendant negligently disclosed Plaintiff's PHI and PII;

C.     Declaring that Defendant has invaded Plaintiff's privacy;

D.     Declaring that Defendant breached its fiduciary duty to Plaintiff;

E.     Declaring that Defendant breached its contract with Plaintiff;

F.     Declaring that Defendant violated the Missouri Merchandising Practices Act;

G.     Declaring that Defendant was negligent by negligently training and supervising its employees;

H.     Ordering Defendant to pay actual damages to Plaintiff;

I.     Ordering Defendant to disseminate individualized notice of the Breach to Plaintiff;

J.     For an Order enjoining Defendant from continuing to engage in the unlawful business practices alleged herein;

K.     Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff;

L.     Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

M.     Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all of his claims and causes of action so triable.

Respectfully submitted,

Maureen M. Brady

_____
Maureen M. Brady      MO#57800
Lucy McShane          MO#57957

28

MCSHANE & BRADY, LLC
4600 Central Street
Kansas City, Missouri 64111
Phone: (816) 888-8010
Fax: (816) 332-6295
E-mail: mbrady@mcshanebradylaw.com
      lmcshane@mcshanebradylaw.com
**ATTORNEYS FOR PLAINTIFF**

29

Electronically Filed - JACKSON - KANSAS CITY - May 09, 2024 - 02:02 PM

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**

| | |
|---|---|
| **J.B.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) Case No: |
| | ) Division: |
| | ) |
| **BLUE EYED BULL INVESTMENT** | ) |
| **CORPORATION d/b/a TEST SMARTLY** | ) |
| **LABS** | ) |
| Serve Registered Agent: | ) |
|     Jennifer V. Gordon | ) |
|     608 SW 3rd St. | ) |
|     Lee's Summit, MO 64063 | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

<u>**ENTRY OF APPEARANCE**</u>

**COMES NOW** Maureen M. Brady of the law firm of McShane & Brady, LLC, and hereby

enters her appearance as counsel on behalf of Plaintiff J.B. in the above-referenced matter.

Respectfully submitted,

*Maureen M. Brady*

_____

Maureen M. Brady     MO #57800
Lucy McShane        MO #57957
MCSHANE & BRADY, LLC
4600 Central Street
Kansas City, Missouri 64111
Telephone:    (816) 888-8010
Facsimile:    (816) 332-6295
E-Mail: mbrady@mcshanebradylaw.com
       lmcshane@mcshanebradylaw.com
**ATTORNEYS FOR PLAINTIFF**

Electronically Filed - JACKSON - KANSAS CITY - May 09, 2024 - 02:02 PM

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**

| | | |
|---|---|---|
| J.B., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Case No: |
| | ) | Division: |
| | ) | |
| **BLUE EYED BULL INVESTMENT** | ) | |
| **CORPORATION d/b/a TEST SMARTLY** | ) | |
| **LABS** | ) | |
| Serve Registered Agent: | ) | |
|     Jennifer V. Gordon | ) | |
|     608 SW 3rd St. | ) | |
|     Lee's Summit, MO 64063 | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

<u>**ENTRY OF APPEARANCE**</u>

**COMES NOW** Lucy McShane of the law firm of McShane & Brady, LLC, and hereby

enters her appearance as counsel on behalf of Plaintiff J.B. in the above-referenced matter.

Respectfully submitted,

*Lucy McShane*

_____

Maureen M. Brady     MO #57800
Lucy McShane       MO #57957
MCSHANE & BRADY, LLC
4600 Central Street
Kansas City, Missouri 64111
Telephone:    (816) 888-8010
Facsimile:    (816) 332-6295
E-Mail: mbrady@mcshanebradylaw.com
         lmcshane@mcshanebradylaw.com
**ATTORNEYS FOR PLAINTIFF**

Electronically Filed - JACKSON - KANSAS CITY - May 09, 2024 - 02:02 PM

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**

| | |
|---|---|
| **J.B.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) Case No: |
| | ) Division: |
| | ) |
| **BLUE EYED BULL INVESTMENT** | ) |
| **CORPORATION d/b/a TEST SMARTLY** | ) |
| **LABS** | ) |
| Serve Registered Agent: | ) |
|     Jennifer V. Gordon | ) |
|     608 SW 3rd St. | ) |
|     Lee's Summit, MO 64063 | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**DESIGNATION OF LEAD COUNSEL**

**COMES NOW** Plaintiff J.B. and hereby designates Maureen M. Brady of the law firm of

McShane & Brady, LLC, as lead counsel on behalf of Plaintiff J.B. in the above-referenced matter.

Respectfully submitted,

*Maureen M. Brady*

_____

Maureen M. Brady     MO #57800
Lucy McShane       MO #57957
MCSHANE & BRADY, LLC
4600 Central Street
Kansas City, Missouri 64111
Telephone:    (816) 888-8010
Facsimile:    (816) 332-6295
E-Mail: mbrady@mcshanebradylaw.com
        lmcshane@mcshanebradylaw.com
**ATTORNEYS FOR PLAINTIFF**

Electronically Filed - JACKSON - KANSAS CITY - May 09, 2024 - 02:02 PM

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**

| | | |
|---|---|---|
| **J.B.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Case No: |
| | ) | Division: |
| | ) | |
| **BLUE EYED BULL INVESTMENT** | ) | |
| **CORPORATION d/b/a TEST SMARTLY** | ) | |
| **LABS** | ) | |
| Serve Registered Agent: | ) | |
|     Jennifer V. Gordon | ) | |
|     608 SW 3rd St. | ) | |
|     Lee's Summit, MO 64063 | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

<u>**MOTION TO KEEP THE IDENTITY OF PLAINTIFF PRIVATE**</u>

**COMES NOW** Plaintiff, by and through counsel, and for his Motion to keep his identity private throughout the course of this litigation. In support of his Motion, Plaintiff states as follows:

1.    Plaintiff is a private citizen who was a patient at Defendant's medical center.

2.    Defendant was under a duty pursuant to state and federal law to keep Plaintiff's medical records, including her identity, confidential and protect against the publication of his private information, including his identity.

3.    On or about March 14th, 2023, Defendant violated its duty and released Plaintiff's medical information to the public.

4.    As a result of Defendant's actions, Plaintiff has filed the instant litigation.

5.    Defendant's actions have already caused Plaintiff permanent and irreparable harm to his privacy.

1

6.  Ongoing and further harm would be done to Plaintiff if he/she were forced to reveal his/her identity in the course of this litigation which would trigger further association to cases pending throughout the State of Missouri.

7.  No prejudice will befall Defendant to maintain Plaintiff's privacy throughout this litigation as Defendant has a continuing duty to maintain Plaintiff's privacy which is not alleviated by the filing of this suit.

WHEREFORE, Plaintiff respectfully requests this Court to order that Plaintiff's identity remain private throughout this litigation and for such further orders as the Court deems necessary under the circumstances.

Respectfully submitted,

_____
Maureen M. Brady      MO#57800
Lucy McShane          MO#57957
MCSHANE & BRADY, LLC
4600 Central Street
Kansas City, MO 64111
Phone: (816) 888-8010
Fax: (816) 332-6295
E-mail: mbrady@mcshanebradylaw.com
         lmcshane@mcshanebradylaw.com
**ATTORNEYS FOR PLAINTIFF**

2

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT KANSAS CITY

J B,

                 **PLAINTIFF(S),**             **CASE NO. 2416-CV13087**

**VS.**                                              **DIVISION 14**

**BLUE EYED BULL INVESTMENT CORPORATION,**

                 **DEFENDANT(S).**

## NOTICE OF CASE MANAGEMENT CONFERENCE FOR CIVIL CASE
## AND ORDER FOR MEDIATION

---

       NOTICE IS HEREBY GIVEN that this case is currently assigned to the Honorable JOHN M. TORRENCE and a Case Management Conference will be held with the Honorable JERRI J ZHANG on **29-AUG-2024** in **DIVISION 3** at **01:30 PM,** pursuant to Administrative Order. All Applications for Continuance of a Case Management Conference should be filed on or before Wednesday of the week prior to the case management setting. Applications for Continuance of a Case Management Conference shall comply with Supreme Court Rule and 16th Cir. R. 34.1. Continuance of a Case Management Conference will only be granted for good cause shown because it is the desire of the Court to meet with counsel and parties in all cases within the first 4 months that a case has been on file. All counsel and parties are directed to check Case.NET on the 16th Judicial Circuit web site at www.16thcircuit.org after filing an application for continuance to determine whether or not it has been granted.

       A lead attorney of record must be designated for each party as required by Local Rule 3.5.1. A separate pleading designating the lead attorney of record shall be filed by each party as described in Local Rule 3.5.2. The parties are advised that if they do not file a separate pleading designating lead counsel, even in situations where there is only one attorney representing the party, JIS will not be updated by civil records department, and copies of orders will be sent to the address currently shown in JIS. Civil Records does not update attorney information from answers or other pleadings. The Designation of Lead Attorney pleading shall contain the name of lead counsel, firm name, mailing address, phone number, FAX number and E-mail address of the attorney who is lead counsel.

       At the Case Management Conference, counsel should be prepared to address at least the following:

    a.      A trial setting;

    b.      Expert Witness Disclosure Cutoff Date;

    c.      A schedule for the orderly preparation of the case for trial;

    d.      Any issues which require input or action by the Court;

    e.      The status of settlement negotiations.

## MEDIATION

The parties are ordered to participate in mediation pursuant to Supreme Court Rule 17. Mediation shall be completed within 10 months after the date the case if filed for complex cases, and 6 months after the date the case is filed for other circuit cases, unless otherwise ordered by the Court. Each party shall personally appear at the mediation and participate in the process. In the event a party does not have the authority to enter into a settlement, then a representative of the entity that does have actual authority to enter into a settlement on behalf of the party shall also personally attend the mediations with the party.

The parties shall confer and select a mutually agreeable person to act as mediator in this case. If the parties are unable to agree on a mediator the court will appoint a mediator at the Case Management Conference.

Each party shall pay their respective pro-rata cost of the mediation directly to the mediator.

## POLICIES/PROCEDURES

Please refer to the Court's web page www.16thcircuit.org for division policies and procedural information listed by each judge.

/S/ **JOHN M. TORRENCE**
JOHN M. TORRENCE**, Circuit Judge**

Certificate of Service

This is to certify that a copy of the foregoing was mailed postage pre-paid or hand delivered to the plaintiff with the delivery of the file-stamped copy of the petition. It is further certified that a copy of the foregoing will be served with the summons on each defendant named in this action.

Attorney for Plaintiff(s):
LUCY GUYOL MCSHANE, 1656 WASHINGTON STREET, SUITE 120, KANSAS CITY, MO 64108

MAUREEN MICHAELA BRADY, 1656 WASHINGTON STREET, SUITE 120, KANSAS CITY, MO 64108

Defendant(s):
 BLUE EYED BULL INVESTMENT CORPORATION
 Dated:  13-MAY-2024

BEVERLY A. NEWMAN
Court Administrator

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI

☒ AT KANSAS CITY ☐ AT INDEPENDENCE

RE: **J B V BLUE EYED BULL INVESTMENT CORPORATION**
CASE NO: **2416-CV13087**

TO: **MAUREEN MICHAELA BRADY**
**1656 WASHINGTON STREET**
**SUITE 120**
**KANSAS CITY, MO  64108**

We have received pleadings, which you submitted for filing in the case and they have been file-stamped on __05/09/2024__.
However, your pleading cannot be processed further until the following action is taken:

**RULE 3.2 - STYLE**
☒ Additional service instructions are needed.
☐ Incorrect case number/filed in wrong county.
☐ Document is unreadable.

**RULE 4.2 (2)**
☐ Need Circuit Court Form 4

**RULE 5.6 – COLLECTIONS OF DEPOSIT**
☐ No fee, or incorrect fee, received; fee required is $_____.
☐ Insufficient Filing Fee; Please Remit $_____
☐ No signature on check/form 1695.
☐ No request to proceed in forma pauperis.
☐ No personal checks accepted.

**RULE 68.1**
☐ Need Circuit Court Form 17

**RULE 68.7 – VITAL STATISTICS REPORT**
☐ Need Certificate of dissolution of marriage form.

**RULE 74.14 SUPREME CT – FOREIGN JUDGMENT**
☐ Authentication of foreign judgment required.
☐ Affidavit pursuant to Supreme Court Rule 74.14

**RULE 54.12  SERVICE IN REM OR QUASI IN REM ACTIONS**
☐ Affidavit for Service by Publication required pursuant to Supreme Court Rule 54.12c.
☐ Order for Service by Publication required pursuant to Supreme Court Rule 54.12c.
☐ Notice for Service by Publication required pursuant to Supreme Court Rule 54.12c.
☐ Affidavit for Service by Certified/Registered Mail pursuant to Supreme Court Rule 54.12b.

☒ **OTHER:   Please submit instructions on how the summons will be served, as well as any associated motions or service fees. 816-881-3970**
☐ Please take the actions necessary to comply with the Circuit Court Rules and your request will be processed.
☐ The private process server listed is not on our approved list.
☐ Execution in effect. Return date _____. Request may be resubmitted within one week prior to return date.
☐ Supreme Court Rule 90.13 requires interrogatories be served with summons of garnishment.

**If the filing was a new case, please be advised that unless the additional information marked is received within 30 days of the date of this notice this case will be dismissed pursuant to Rule 37.4 for failure to prosecute without prejudice, at the Plaintiff's cost.  Collection efforts will be pursued for these costs.**

**Please refer to the Court's website at www.16thcircuit.org for Court Rules or Forms.**

Copies electronic noticed, faxed, emailed and/or mailed MAY 13, 2024 to:

COURT ADMINISTRATOR'S OFFICE
**DEPARTMENT OF CIVIL RECORDS**
CIRCUIT COURT OF JACKSON COUNTY, MISSOURI

_____
MAY 13, 2024
Date

By _____
Deputy Court Administrator
☒ 415 East 12th St., Kansas City, Missouri 64106
☐ 308 W. Kansas, Independence, Missouri 64050

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI

| | | |
|---|---|---|
| **J.B.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Case No:2416-CV13087 |
| | ) | Division: 14 |
| | ) | |
| **BLUE EYED BULL INVESTMENT** | ) | |
| **CORPORATION d/b/a TEST SMARTLY** | ) | |
| **LABS** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

### REQUEST FOR SUMMONS

Plaintiff J.B respectfully requests the Court issue a Summons be issued by the Circuit clerk in this case. Plaintiff is requesting a summons to be issued for the following defendants:

BLUE EYED BULL INVESTMENT
CORPORATION d/b/a TEST SMARTLY LABS
Serve Registered Agent:
    Jennifer V. Gordon
    608 SW 3rd St.
    Lee's Summit, MO 64063

        Respectfully submitted,

        *Maureen M. Brady*

        _____

        Maureen M. Brady    MO#57800
        Lucy McShane      MO#57957
        MCSHANE & BRADY, LLC
        4006 Central Street
        Kansas City, Missouri 64111
        Phone:  (816) 888-8010
        Fax:  (816) 332-6295
        E-mail: mbrady@mcshanebradylaw.com
        lmcshane@mcshanebradylaw.com
        **ATTORNEYS FOR PLAINTIFF**

1

2

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI

| | | |
|---|---|---|
| **J.B.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Case No:2416-CV13087 |
| | ) | Division: 14 |
| | ) | |
| **BLUE EYED BULL INVESTMENT** | ) | |
| **CORPORATION d/b/a TEST SMARTLY** | ) | |
| **LABS** | ) | |
| **Defendant.** | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

**COMES NOW** Plaintiff, by and through counsel, and hereby certifies that copies in paper and electronic format of *Plaintiff's Opening Interrogatories to Defendant, Plaintiff's First Request for Admissions.* and *Plaintiff's First Requests for Production of Documents to Defendant* were served along with the Petition for Damages in the service packet.

Respectfully submitted,

*Maureen M. Brady*

_____
Maureen M. Brady     MO#57800
Lucy McShane   MO#57957
4006 Central Street
Kansas City, MO 64111
Phone:  (816) 888-8010
Fax:  (816) 332-6295
E-mail: mbrady@mcshanebradylaw.com
lmcshane@mcshanebradylaw.com
**ATTORNEYS FOR PLAINTIFF**

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI

| | | |
|---|---|---|
| **J.B.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Case No:2416-CV13087 |
| | ) | Division: 14 |
| | ) | |
| **BLUE EYED BULL INVESTMENT** | ) | |
| **CORPORATION d/b/a TEST SMARTLY** | ) | |
| **LABS** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MOTION FOR APPROVAL AND APPOINTMENT OF PRIVATE PROCESS SERVER

COMES NOW Plaintiff, by and through its attorney of record, and for its Motion for

Approval/Appoint of Private Process Server, and requests that D&B Legal Services, Inc.: Legal

Names (s): who are qualified persons to serve process, are not parties and are not less than eighteen

(18) years of age, as private process servers in the above cause to serve process in this case.

| | | |
|---|---|---|
| Russell Adair PPS24-0001 | Stephen Heitz PPS24-0221 | Jacob Peterson PPS24-0370 |
| Alisha Allen PPS24-0003 | Mindy Hicks PPS24-0055 | Mike Perry PPS24-0098 |
| Carl Barnett PPS24-0010 | Moses Hicks IV PPS24-0056 | Elizabeth Phillips PPS24-0446 |
| Thomas Bogue PPS24-0164 | Bridgette Hight PPS24-0057 | Craig Podgurski JR PPS24-0100 |
| Scott Brady PPS24-0020 | Wendy Hilgenberg PPS24-0487 | Craig Poese PPS24-0101 |
| Gary Burt PPS24-0173 | James Hise PPS24-0443 | Bill Powell PPS24-0103 |
| Steven Butcher PPS24-0024 | Wayne Holcomb PS24-0059 | Dee Powell PPS24-0104 |
| Bobby Calvert PPS24-0174 | Jennifer Hyman PPS24-0063 | Samantha Powell PPS24-0105 |
| Carolyn Champlin PPS24-0025 | Matthew Jones PPS24-0067 | Kenneth Prewett PPS24-0107 |
| Scott Cisney PPS24-0026 | Patrick Jones PPS24-0235 | Benjamin Purser PPS24-0289 |
| Lenora Cope PPS24-0489 | Angelique Julian PPS24-0068 | Mark Rauss PPS24-0109 |
| James Cox PPS24-0029 | Chelsey Ketron PPS24-0070 | Ginger Robertson PPS24-0493 |
| Peggy Cranston-Butcher PPS24-0030 | Leisa Ketron PPS24-0069 | Kain Royer PPS24-0447 |
| Ariel Derr PPS24-0486 | Brent Kirkhart PPS24-0071 | Kathy Rulo PPS24-0449 |
| Chris Drummond PPS24-0439 | Janice Kirkhart PPS24-0072 | Rene Rulo PPS24-0448 |
| Anthony Dunne PPS24-0440 | Tyler Kirkhart PPS24-0073 | Edna Russell PPS24-0450 |
| Brandon Fisher PPS24-0040 | Denis Kolb PPS24-0488 | Westley Seifert PPS24-0313 |
| Kurie Ghershini PPS24-0046 | Michael Meador PPS24-0255 | Joe Sherrod PPS24-0124 |
| Bradley Gordon PPS24-0211 | Heather Merfen PPS24-0085 | David Shirley PPS24-0125 |
| Mackenzie Green PPS24-0048 | Matthew Millhollin PPS24-0261 | Thomas Skinner PPS24-0317 |
| Eric Hahn PPS24-0050 | Zachary Mueller PPS24-0089 | Richard Skyles PPS24-0427 |
| Darnell Hamilton PPS24-0051 | Michael Noble PPS24-0095 | Mark Smith PPS24-0128 |
| James Hannah PPS24-0052 | Greg Noll PPS24-0096 | Anthony Spada PPS24-0322 |
| Rufus Harmon PPS24-0053 | Cody Patton PPS24-0282 | |

1

Electronically Filed - JACKSON - KANSAS CITY - May 29, 2024 - 10:49 AM

Barbara Steil PPS24-0325
Randy Stone PPS24-0130
Sonja Stone PPS24-0131
Dylan Stricklin PPS24-0452
Kalen Stricklin PPS24-0451
Carrie Stroup PPS24-0453

Cody Swartz PPS24-0134
Austin James Weekley PPS24-0144
Doreen Weekley PPS24-0145
Ryan E Weekley PPS24-0146
Ryan M Weekley PPS24-0147

Robert Weishar PPS24-0148
Andrew Wickliffe PPS24-0150
Gregory Willing PPS24-0342
Conni Wilson PPS24-0154
Greg Zotta PPS24-0457

Respectfully submitted,

_____
Maureen M. Brady      MO#57800
Lucy McShane           MO#57957
MᶜSHANE & BRADY, LLC
4006 CENTRAL STREET
Kansas City, MO 64111
Telephone:  (816) 888-8010
Facsimile:  (816) 332-6295
E-mail: mbrady@mcshanebradylaw.com
lmcshane@mcshanebradylaw.com
**ATTORNEYS FOR PLAINTIFF**

2

**IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS**

| | | |
|---|---|---|
| **TRAVIS SIMONS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case Number: |
| | ) | |
| **JOHN DETERDING** | ) | |
| Serve at: | ) | Pursuant to K.S.A. Chapter 60 |
| 615 Meadowbrook Ct. | ) | |
| Wellsville, KS 66092 | ) | |
| | ) | |
| Defendant. | ) | |

**PROPSOED ORDER FOR PRIVATE PROCESS SERVICE**

It is hereby ordered that the Plaintiff's Motion for Approval and Appointment of private

process server is sustained, and the above-named individual is hereby approved and appointed to

serve process in the above-captioned matter.

IT IS HEREBY ORDERED.


DATE: **_____**                  _____

                                                                    Judge of the Circuit Court

3

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**

| | | |
|---|---|---|
| J.B., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Case No:2416-CV13087 |
| | ) | Division: 14 |
| | ) | |
| **BLUE EYED BULL INVESTMENT** | ) | |
| **CORPORATION d/b/a TEST SMARTLY** | ) | |
| **LABS** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**NOTICE TO TAKE THE DEPOSITION**
**OF DEFENDANT'S CORPORATE REPRESENTATIVE**

**PLEASE TAKE NOTICE** that in accordance with Mo.R.Civ.P. 57.03 the deposition of a

company representative of Defendant Blue Eyed Bull Investment Corporation d/b/a Test Smrtly

Labs ("TSL"), whom Defendant is requested to produce, to be used in evidence in the above-

entitled cause on the part of plaintiff will be taken at a mutually agreed upon place on a date and

time mutually convenient to the parties and counsel, between  the hours of 8:00 o'clock in the

forenoon and 6:00 o'clock in the afternoon of that day, and that the taking of the said deposition,

if not completed on that day, will be continued from day to day, at the same place and between the

same hours until completed.  The topics which the representative will be testifying to are as

follows:

1.      All policies and procedures of Defendant TSL, including the training of

employees regarding the maintenance of patients' private health information.

2.      The relationship between Defendant TSL, and Plaintiff.

3.      All the allegations and claims contained in Plaintiff's Petition for Damages.

4.      All responses to discovery propounded to Defendant in this matter.

1

5. All investigations and the resulting actions conducted by TSL and any governmental department or agency regarding the wrongful disclosure of private health information by TSL from 2014 through the present.

6. All policies and procedures regarding actions, investigations, audits, reports, or inquiries conducted by Defendant TSL into any potential wrongful disclosure of private health information.

7. All policies and procedures regarding actions, investigations, audits, reports, or inquiries conducted by Defendant TSL into any violation of the HIPAA statutes made by Defendant.

8. Plaintiff's medical records wrongfully disclosed to a third party.

9. The policies and procedures utilized by Defendant regarding employees accessing or disclosing medical records.

10. All policies and procedures utilized by Defendant from 2014 to the present regarding the actions to discover or investigate a wrongful disclosure of private health information and the actions taken following discovery of the same.

11. The identity, including name, job title, and job description, of all persons or entities who have knowledge of the facts contained in Plaintiff's Petition for Damages.

12. All policies and procedures of Defendant TSL, including the training of employees regarding the maintenance of patients' private health information and compliance with same by Defendant.

13. All compliance requirements with Federal Statutes and agencies regarding privacy of patient medical records and Defendant's fulfillment of the same from 2014 to the present.

14.     All defenses asserted by Defendant TSL in this case.


                                        Respectfully submitted,

                                        _____
                                        Maureen M. Brady      MO#57800
                                        Lucy McShane          MO#57957
                                        MCSHANE & BRADY, LLC
                                        4006 CENTRAL STREET
                                        Kansas City, MO 64111
                                        Telephone:  (816) 888-8010
                                        Facsimile:  (816) 332-6295
                                        E-mail: mbrady@mcshanebradylaw.com
                                        lmcshane@mcshanebradylaw.com
                                        **ATTORNEYS FOR PLAINTIFF**

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI

☒ AT KANSAS CITY ☐ AT INDEPENDENCE

**RE**: **J B V BLUE EYED BULL INVESTMENT CORPORATION**
**CASE NO**: **2416-CV13087**

**TO**: **MAUREEN MICHAELA BRADY**
**1656 WASHINGTON STREET**
**SUITE 120**
**KANSAS CITY, MO 64108**

We have received pleadings, which you submitted for filing in the case and they have been file-stamped on _____.
However, your pleading cannot be processed further until the following action is taken:

**RULE 3.2 - STYLE**
☐ Additional service instructions are needed.
☐ Incorrect case number/filed in wrong county.
☐ Document is unreadable.

**RULE 4.2 (2)**
☐ Need Circuit Court Form 4

**RULE 5.6 – COLLECTIONS OF DEPOSIT**
☐ No fee, or incorrect fee, received; fee required is $_____.
☐ Insufficient Filing Fee; Please Remit $_____
☐ No signature on check/form 1695.
☐ No request to proceed in forma pauperis.
☐ No personal checks accepted.

**RULE 68.1**
☐ Need Circuit Court Form 17

**RULE 68.7 – VITAL STATISTICS REPORT**
☐ Need Certificate of dissolution of marriage form.

**RULE 74.14 SUPREME CT – FOREIGN JUDGMENT**
☐ Authentication of foreign judgment required.
☐ Affidavit pursuant to Supreme Court Rule 74.14

**RULE 54.12 SERVICE IN REM OR QUASI IN REM ACTIONS**
☐ Affidavit for Service by Publication required pursuant to Supreme Court Rule 54.12c.
☐ Order for Service by Publication required pursuant to Supreme Court Rule 54.12c.
☐ Notice for Service by Publication required pursuant to Supreme Court Rule 54.12c.
☐ Affidavit for Service by Certified/Registered Mail pursuant to Supreme Court Rule 54.12b.

☒ **OTHER: Your proposed order for private process server must include the same names and registration numbers as is on your motion. Please refile your proposed order for private process server. Contact with any questions at 816-881-3970.**
☐ Please take the actions necessary to comply with the Circuit Court Rules and your request will be processed.
☐ The private process server listed is not on our approved list.
☐ Execution in effect. Return date _____. Request may be resubmitted within one week prior to return date.
☐ Supreme Court Rule 90.13 requires interrogatories be served with summons of garnishment.

**If the filing was a new case, please be advised that unless the additional information marked is received within 30 days of the date of this notice this case will be dismissed pursuant to Rule 37.4 for failure to prosecute without prejudice, at the Plaintiff's cost. Collection efforts will be pursued for these costs.**

**Please refer to the Court's website at www.16thcircuit.org for Court Rules or Forms.**

Copies electronic noticed, faxed, emailed and/or mailed MAY 29, 2024 to:

COURT ADMINISTRATOR'S OFFICE
**DEPARTMENT OF CIVIL RECORDS**
CIRCUIT COURT OF JACKSON COUNTY, MISSOURI

_____ MAY 29, 2024 _____    By _____
Date

Deputy Court Administrator
☒ 415 East 12th St., Kansas City, Missouri 64106
☐ 308 W. Kansas, Independence, Missouri 64050

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT KANSAS CITY

J B,                                      )
          Plaintiff,                )
    vs.                               )     Case No.  2416-CV13087
                      )     Division   14
                      )
 BLUE EYED BULL INVESTMENT          )
CORPORATION                               )
          Defendant.                )

## ORDER

NOW, on this 10th day of June, 2024, this Court takes up Plaintiff's *Motion to Keep Identity of Plaintiff Private*, filed May 9, 2024.  After a review of the relevant points and authorities,

**IT IS HEREBY ORDERED** that this Motion is **GRANTED**.  Plaintiff's identity shall remain private throughout this litigation.

**IT IS SO ORDERED.**

_____
      June 10, 2024
         DATE

_____
JOHN M. TORRENCE, CIRCUIT JUDGE

## Certificate of Service

This is to certify that a copy of the foregoing was automatically forwarded to the attorneys of record through the Court's eFiling system.  In addition, this certifies that a copy of the foregoing was hand delivered/faxed/emailed/mailed to the following on June 4, 2024.

   BLUE EYED BULL INVESTMENT CORPORATION
   RA: JENNIFER V GORDON
   608 SW 3RD ST
   LEE SUMMIT, MO 64063

_____
Law Clerk / Judicial Administrative Assistant, Division 14

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**

| | | |
|---|---|---|
| **J.B.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Case No:2416-CV13087 |
| | ) | Division: 14 |
| | ) | |
| **BLUE EYED BULL INVESTMENT** | ) | |
| **CORPORATION d/b/a TEST SMARTLY** | ) | |
| **LABS** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## PROPOSED ORDER GRANTING MOTION FOR PRIVATE PROCESS SERVER

On this ____ day of _____, 2024, this matter is brought before the
Court on Plaintiff's Motion for Private Process Service.  Now having reviewed the Motion
and being fully advised in the premises the Court hereby GRANTS Plaintiff's Motion and
approves D&B Legal Services, Inc. as the private process server. The following name(s):
who are qualified persons to serve process, are not parties and are not less than eighteen
(18) years of age, they may be appointed as private process servers in the above cause to
serve process in this case.

| | | |
|---|---|---|
| Russell Adair PPS24-0001 | Lenora Cope PPS24-0489 | Mackenzie Green PPS24-0048 |
| Alisha Allen PPS24-0003 | James Cox PPS24-0029 | Eric Hahn PPS24-0050 |
| Carl Barnett PPS24-0010 | Peggy Cranston-Butcher | Darnell Hamilton PPS24-0051 |
| Thomas Bogue PPS24-0164 | PPS24-0030 | James Hannah PPS24-0052 |
| Scott Brady PPS24-0020 | Ariel Derr PPS24-0486 | Rufus Harmon PPS24-0053 |
| Gary Burt PPS24-0173 | Chris Drummond PPS24-0439 | Stephen Heitz PPS24-0221 |
| Steven Butcher PPS24-0024 | Anthony Dunne PPS24-0440 | Mindy Hicks PPS24-0055 |
| Bobby Calvert PPS24-0174 | Brandon Fisher PPS24-0040 | Moses Hicks IV PPS24-0056 |
| Carolyn Champlin PPS24-0025 | Kurie Ghershini PPS24-0046 | Bridgette Hight PPS24-0057 |
| Scott Cisney PPS24-0026 | Bradley Gordon PPS24-0211 | Wendy Hilgenberg PPS24-0487 |

1

James Hise PPS24-0443
Wayne Holcomb PS24-0059
Jennifer Hyman PPS24-0063
Matthew Jones PPS24-0067
Patrick Jones PPS24-0235
Angelique Julian PPS24-0068
Chelsey Ketron PPS24-0070
Leisa Ketron PPS24-0069
Brent Kirkhart PPS24-0071
Janice Kirkhart PPS24-0072
Tyler Kirkhart PPS24-0073
Denis Kolb PPS24-0488
Michael Meador PPS24-0255
Heather Merfen PPS24-0085
Matthew Millhollin PPS24-0261
Zachary Mueller PPS24-0089
Michael Noble PPS24-0095
Greg Noll PPS24-0096
Cody Patton PPS24-0282

Jacob Peterson PPS24-0370
Mike Perry PPS24-0098
Elizabeth Phillips PPS24-0446
Craig Podgurski JR PPS24-0100
Craig Poese PPS24-0101
Bill Powell PPS24-0103
Dee Powell PPS24-0104
Samantha Powell PPS24-0105
Kenneth Prewett PPS24-0107
Benjamin Purser PPS24-0289
Mark Rauss PPS24-0109
Ginger Robertson PPS24-0493
Kain Royer PPS24-0447
Kathy Rulo PPS24-0449
Rene Rulo PPS24-0448
Edna Russell PPS24-0450
Westley Seifert PPS24-0313
Joe Sherrod PPS24-0124
David Shirley PPS24-0125
Thomas Skinner PPS24-0317

Richard Skyles PPS24-0427
Mark Smith PPS24-0128
Anthony Spada PPS24-0322
Barbara Steil PPS24-0325
Randy Stone PPS24-0130
Sonja Stone PPS24-0131
Dylan Stricklin PPS24-0452
Kalen Stricklin PPS24-0451
Carrie Stroup PPS24-0453
Cody Swartz PPS24-0134
Austin James Weekley PPS24-0144
Doreen Weekley PPS24-0145
Ryan E Weekley PPS24-0146
Ryan M Weekley PPS24-0147
Robert Weishar PPS24-0148
Andrew Wickliffe PPS24-0150
Gregory Willing PPS24-0342
Conni Wilson PPS24-0154
Greg Zotta PPS24-0457

IT IS HEREBY ORDERED

07/12/2024
DEPUTY COURT ADMINISTRATOR

2

Respectfully submitted,

_Maureen M. Brady_

_____
Maureen M. Brady     MO #57800
Lucy McShane     MO #57957
MCSHANE & BRADY, LLC
4006 Central Street
Kansas City, Missouri 64111
Telephone:   (816) 888-8010
Facsimile:   (816) 332-6295
E-Mail:
        mbrady@mcshanebradylaw.com
        lmcshane@mcshanebradylaw.com

**ATTORNEYS FOR PLAINTIFF**

3

# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI



| | |
|---|---|
| Judge or Division:<br>JOHN M. TORRENCE | **Case Number: 2416-CV13087** |
| Plaintiff/Petitioner:<br><br>J B | Plaintiff's/Petitioner's Attorney/Address<br>MAUREEN MICHAELA BRADY<br>MCSHANE & BRADY, LLC<br>4006 CENTRAL STREET<br>KANSAS CITY, MO  64111 |
| **vs.** | |
| Defendant/Respondent:<br> BLUE EYED BULL INVESTMENT<br>CORPORATION<br>DBA:  TEST SMARTLY LABS | Court Address:<br>415 E 12th<br>KANSAS CITY, MO  64106 |
| Nature of Suit:<br>CC Pers Injury-Other | |
| | (Date File Stamp) |

## Summons in Civil Case

| | |
|---|---|
| The State of Missouri to: | **BLUE EYED BULL INVESTMENT CORPORATION**<br>**Alias:**<br>**DBA:  TEST SMARTLY LABS** |

**RA: JENNIFER V GORDON**
**608 SW 3RD ST**
**LEE SUMMIT, MO  64063**

# PRIVATE PROCESS SERVER

*COURT SEAL OF*

*JACKSON COUNTY*

   You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service.  If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

_12-JUL-2024_
Date

_____
Clerk

Further Information:

### Sheriff's or Server's Return

**Note to serving officer:**  Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by:  (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling place or usual abode of the defendant/respondent with
_____ a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to

_____ (name) _____ (title).

☐ other _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____
Printed Name of Sheriff or Server

_____
Signature of Sheriff or Server

*(Seal)*    **Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

My commission expires: _____         _____
                                          Date                                          Notary Public

**Sheriff's Fees**

| | | |
|---|---|---|
| Summons | $ | _____ |
| Non Est | $ | _____ |
| Sheriff's Deputy Salary | | |
| Supplemental Surcharge | $ | _____10.00_____ |
| Mileage | $ | _____ (_____ miles @ $._____ per mile) |
| **Total** | **$** | _____ |

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (11/2021) SM30 (JAKSMCC) *For Court Use Only:* **Document 1-2 SMCC-7439** 1 of 1 Civil Procedure Form No. 1, Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 4:24-cv-00565-JAM Document 1-2 Filed 08/28/24 Page 55 of 58

**SUMMONS/GARNISHMENT SERVICE PACKETS**
**ATTORNEY INFORMATION**

Under the Missouri e-filing system now utilized by the 16th Judicial Circuit Court, once a case has been accepted for filing, a clerk prepares the necessary documents for service. The summons/garnishment is sent to the attorney by an e-mail containing a link so that the filer may print and deliver the summons/garnishment, pleadings and any other necessary documents to the person designated to serve the documents.

Pursuant to State statutes, Supreme Court Rules and Local Court Rules, attorneys are required to print, attach and serve specific documents with certain types of Petitions and other filings.

Please refer to the Court's website for instructions on how to assemble the service packets at:

16thcircuit.org → Electronic Filing Information → Required Documents for Service – eFiled cases → Summons/Garnishment Service Packet Information.

Please review this information periodically, as revisions are frequently made.   Thank you.

Circuit Court of Jackson County

Electronically Filed - JACKSON - KANSAS CITY - August 08, 2024 - 01:30 PM

## AFFIDAVIT OF SERVICE

**State of Missouri**    County of Jackson                **Circuit Court**

Case Number: 2416-CV13087

Plaintiff:
**J.B.**


POW2024010004

vs.

Defendant:
**BLUE EYED BULL INVESTMENT CORPORATION D/B/A TEST SMARTLY LABS**

For:
MCSHANE & BRADY, LLC
4006 Central St
Kansas City, MO 64111

Received by D & B Legal Service, LLC to be served on **BLUE EYED BULL INVESTMENT CORPORATION D/B/A TEST SMARTLY LABS C/O RA: JENNIFER V GORDON, 608 SW 3RD ST, LEE'S SUMMIT, MO 64063**.

I, Andrew Wickliffe PPS24-0150, being duly sworn, depose and say that on the **5th day of August, 2024** at **10:36 am, I:**

served a **CORPORATION** by delivering a true copy of the **Summons in Civil Case, Petition For Damages, Entry of Appearance, Entry of Appearance, Designation of Lead Counsel, Motion to Keep the Identity of Plaintiff Private, Notice of Case Management Conference for Civil Case and Order for Mediation, Order, Notice to Take Deposition of Defendant's Corporate Representative, Proposed Order Granting Motion for Private Process Server, Motion for Approval and Appointment of Private Process Server and Proposed Order for Private Process Service** with the date and hour of service endorsed thereon by me, to: **JENNIFER GORDON** as **REGISTERED AGENT** for **BLUE EYED BULL INVESTMENT CORPORATION D/B/A TEST SMARTLY LABS**, at the address of: **608 SW 3RD ST, LEE'S SUMMIT, MO 64063**.

I certify that I am over the age of 18 and have no interest in the above action and the foregoing statements made by me are true and correct.

Subscribed and Sworn to before me on the 7th day of August, 2024

**Andrew Wickliffe PPS24-0150**
Process Server

**D & B Legal Service, LLC**
**5350 W 94th Ter Ste 206**
**Prairie Village, KS 66207**
**(913) 362-8110**

NOTARY PUBLIC

JAMES HANNAH
Notary Public State of Kansas
My Appt. Expires 8/23/27

Our Job Serial Number: POW-2024010004

Copyright © 1992-2024 DreamBuilt Software, Inc. - Process Server's Toolbox V9.0a



# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>JOHN M. TORRENCE | Case Number: 2416-CV13087 |
|---|---|
| Plaintiff/Petitioner:<br>J B | Plaintiff's/Petitioner's Attorney/Address<br>MAUREEN MICHAELA BRADY<br>MCSHANE & BRADY, LLC<br>4006 CENTRAL STREET |
| vs. | KANSAS CITY, MO 64111 |
| Defendant/Respondent:<br>BLUE EYED BULL INVESTMENT<br>CORPORATION<br>DBA: TEST SMARTLY LABS | Court Address:<br>415 E 12th<br>KANSAS CITY, MO 64106 |
| Nature of Suit:<br>CC Pers Injury-Other | (Date File Stamp) |

## Summons in Civil Case

| | |
|---|---|
| The State of Missouri to: | BLUE EYED BULL INVESTMENT CORPORATION<br>Alias:<br>**DBA: TEST SMARTLY LABS** |

**RA: JENNIFER V GORDON**
**608 SW 3RD ST**
**LEE SUMMIT, MO 64063**

# PRIVATE PROCESS SERVER

*COURT SEAL OF*



*CIRCUIT COURT OF MISSOURI*

*JACKSON COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

12-JUL-2024
Date

_____
Clerk

Further Information:

---

### Sheriff's or Server's Return

Note to serving officer: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling place or usual abode of the defendant/respondent with _____ a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to

_____ (name) _____ (title).

☐ other _____

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server                    Signature of Sheriff or Server

*(Seal)*        **Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

My commission expires: _____          _____
                                 Date                                        Notary Public